## IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA

BLACKWELL ENTERPRISES, INC.,    )
    )
    Plaintiff,    )
    )
vs.    )    No. CIV-12-1242-D
    )
HENKELS & McCOY, INC.,    )
    )
    Defendant.    )

## O R D E R

Before the Court is the motion [Doc. No. 4] of Defendant Henkels & McCoy, Inc. ("Henkels") to dismiss this action for improper venue pursuant to Fed. R. Civ. P. 12(b)(3), seeking to enforce a forum selection clause contained in the written agreement executed by the parties. Plaintiff Blackwell Enterprises, Inc. ("Blackwell") timely responded to the motion, and Henkels filed a reply.

### I. Background:

Blackwell brought this action in the District Court of McClain County, Oklahoma, seeking damages resulting from Henkels's alleged breach of a contract for services rendered to it by Blackwell in connection with the restoration of a pipeline right-of-way associated with a pipeline constructed by Henkels in Pennsylvania. The parties negotiated a written agreement in which Henkels was the contractor and Blackwell the subcontractor ("Agreement"). A copy of the Agreement is submitted as Exhibit 1 to Henkel's motion to dismiss. Blackwell alleges that Henkels is obligated to pay to Blackwell the sum of $1,235,343.67 plus interest for work performed by Blackwell pursuant to the Agreement and that Henkels has refused to pay the amount due and owing.

Henkels timely removed the action in accordance with 28 U. S. C. § 1441(a) and (b), basing federal jurisdiction on diversity of citizenship between the parties because Blackwell is an Oklahoma corporation having its principal place of business in Oklahoma, Henkels is a Pennsylvania corporation with a Pennsylvania principal place of business, and the amount in controversy exceeds $75,000.00, exclusive of interests and costs.  Blackwell does not dispute the existence of diversity.

After removing the action, Henkels filed a motion to dismiss, alleging venue is improper here because the Agreement contains a forum selection clause mandating that disputes arising thereunder be litigated in the Court of Common Pleas of Montgomery County, Pennsylvania.

II.  Standards governing forum selection clauses:

Where a litigant seeks enforcement of a forum selection clause, the issue is analyzed, as Henkels asserts, as a Fed. R. Civ. P. 12(b)(3) motion to dismiss for improper venue.  *K & V Scientific Co., Inc. v. Bayerische Motoren Werke Aktiengesellschaft*, 314 F.3d 494, 497 (10th Cir. 2002).  Accordingly, the Court is not confined to examining only the allegations in the complaint, but may consider material outside the pleadings.  "A district court may examine facts outside the complaint to determine whether its venue is improper." 5B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1352,  at 324 (3d ed. 2004).  Although the Court considers the well-pleaded facts regarding venue as set forth in the complaint, *see Pierce v. Shorty Small's of Branson, Inc.*, 137 F.3d 1190, 1192 (10th Cir. 1998), a defendant may seek to defeat venue by introducing evidence of its impropriety. *Hancock v. American Telephone and Telegraph Company, Inc.,* 701 F.3d 1248, 1260 (10th Cir. 2012).  If the defendant does so, the plaintiff then bears the burden of showing that venue is proper.  *Id.*

III.  Application:

"'In civil cases, the question of whether a litigant has brought an action in the proper court is a question of law.'" *Witte v. Sloan*, 250 F. App'x 250, 253 (10th Cir. 2007) (unpublished opinion) (quoting *Ballesteros v. Ashcroft*, 452 F.3d 1153, 1160 (10th Cir. 2006)).  Similarly, "'[t]he enforceability of [a] forum selection' clause is a question of law." *K & V Scientific,* 314 F.3d at 497 (quoting *Riley v. Kingsley Underwriting Agencies, Ltd.*, 969 F.2d 953, 956 (10th Cir. 1992)).

In this case, the forum selection clause in the Agreement appears at  Paragraph 23, which establishes a dispute resolution procedure to be followed in the event of "[a]ny dispute between the parties hereto, arising out of or related to this Agreement."  Agreement, ¶ 23 at p. 6.  The initial step in the procedure consists of the exchange of written statements between the parties in which they set out their respective positions regarding the disputed matter.  *Id.* at ¶ 23 (a) and (b).  If they are unable to reach an agreement, the dispute may  be resolved by "arbitration or by suit in court, in accordance with the Contractor's direction."  *Id.* at ¶ 23(c).  The Agreement then provides that, if a lawsuit results, "suit must be instituted in, and the parties consent to the jurisdiction of, the Court of Common Pleas of Montgomery County, Pennsylvania." *Id.*

The construction of a forum selection clause is a matter of contract interpretation for the Court.  *K & V Scientific*, 314 F.3d at 497(citing *SBKC Serv. Corp. v. 1111 Prospect Partners, L.P.*, 105 F.3d 578, 581 (10th Cir. 1997)).  Because contract interpretation requires the application of state law, the Court must first determine the law to apply in interpreting the forum selection clause.

"Under Oklahoma law, 'a contract will be governed by the laws of the state where the contract was entered into *unless otherwise agreed* and unless contrary to the law or public policy of the state where enforcement of the contract is sought.'" *Been v. O.K. Industries, Inc.*, 495 F.3d

1217, 1236 (10th Cir. 2007) (quoting *Williams v. Shearson Lehman Bros.*, 917 P.2d 998, 1002 (Okla. Civ. App. 1995)) (emphasis added).  In this case, Blackwell alleges that the Agreement was sent by Henkels to Oklahoma, where it was executed by Blackwell's President, Robert Blackwell, and returned to Pennsylvania, where it was executed by Henkels's Vice President, Robert Johnston. Even if it were not deemed to have been executed in Pennsylvania, however, the Agreement expressly states that it "is being executed and delivered in the Commonwealth of Pennsylvania and shall be construed and enforced in accordance with the law thereof."  Agreement ¶ 35.  Blackwell does not argue that Pennsylvania law is inapplicable.   Accordingly, the Court will apply Pennsylvania law to interpret the Agreement.

Under Pennsylvania law, contract interpretation presents a question of law for the Court, and the following analysis applies:

> In cases of a written contract, the intent of the parties is the writing itself. If left undefined, the words of a contract are to be given their ordinary meaning. *Pines Plaza Bowling, Inc. v. Rossview, Inc.*, 394 Pa. 124, 145 A.2d 672 (1958). When the terms of a contract are clear and unambiguous, the intent of the parties is to be ascertained from the document itself. *Hutchison v. Sunbeam Coal Corp.*, 513 Pa. 192, 519 A.2d 385, 390 (1986).

*Kripp v. Kripp*, 849 A.2d 1159, 1163, 1164 n. 5 (Pa. 2004).  "It is settled law that a party is bound by clear and unambiguous language contained in a contract."  *Patriot Commercial Leasing Co., Inc. v. Kremer Restaurant Enterprises, LLC*, 915 A.2d 647, 651 (Pa. Super. Ct. 2006), *appeal denied,* 951 A.2d 1166 (Pa. 2008).

"The scope of a forum selection clause is a question of contract interpretation."  *Marino v. Cross Country Bank*, 2007 WL 1946533, at *5 (E.D. Pa. June 29, 2007) (unpublished) (citing *John Wyeth & Brother Ltd. v. Cigna Int'l Corp.*, 119 F.3d 1070, 1073 (3d Cir. 1997)).  To interpret the

contract,"'we first look to the text of the contract to determine whether it unambiguously states the parties' intentions.'" *Id*. (quoting *John Wyeth*, 119 F.3d at 1074). "To be 'unambiguous,' a contract clause must be reasonably capable of only one construction." *Id*. "A contract is ambiguous if it is reasonably susceptible of different constructions and capable of being understood in more than one sense." *Kripp*, 849 A.2d at 1163 (citing *Hutchison*, 519 A.2d at 390).

In this case, Blackwell refers to ambiguity in its response brief, but it does not identify any language in the forum selection clause which it contends is unclear or ambiguous. The Court has examined the clause according to the Pennsylvania law and applicable court decisions construing contracts. According to those decisions, the forum selection clause at issue here is clear and unambiguous.

Applying Pennsylvania law to determine whether a forum selection clause in a settlement agreement was unambiguous and enforceable, *Marino* examined a clause granting "exclusive jurisdiction" to the Delaware federal court "for any claims or disputes...arising out of, or relating to" the settlement. *Marino*, 2007 WL 1946533, at *5. According to the court, "to say the origin of a dispute is 'related' to an agreement is to say that the origin of the dispute has some 'logical or causal connection' to the agreement." *Id.* (quoting *John Wyeth*, 119 F.3d at 1074). The court found that the phrases, "arising out of" or "relating to," unambiguously applied the forum selection clause to any dispute having a logical connection to the agreement. Accordingly, the court found no ambiguity, and held the forum selection clause to be enforceable. *Id.*

Similarly, *Patriot* held that a clause requiring that "any legal action concerning  this lease shall be brought in federal or state court located within or for Montgomery County, Pennsylvania" was not ambiguous because it was set out in "plain and nonlegal language." *Patriot*, 915 A.2d at

649, 651.  Thus, the court found the contract clearly required litigation to be brought in one of the designated forums, and it enforced the forum selection clause.

The forum selection clause language in this case is similar to that in both *Marino* and *Patriot*, as it applies to "any dispute" between the parties "arising out of or related to this Agreement." Agreement at ¶ 23.  It further provides that litigation related to those disputes, "must be instituted in...the Court of Common Pleas of Montgomery County, Pennsylvania." *Id*. at ¶ 23(c).  Thus, the Court concludes that the clause is clear and unambiguous.

Having so concluded, the Court must determine whether the clause is mandatory and enforceable.  Although interpretation of the parties' contract requires application of state law, the majority of federal circuit courts have held that federal common law governs the effect to be given to a forum selection clause in a diversity action.  *See* 14D Charles Alan Wright, Arthur R. Miller, & Edward H. Cooper, *Federal Practice and Procedure,* §3803.1 (3d ed. 2007). The Tenth Circuit has not expressly addressed the question.  *Smith v. Strongbuilt, Inc.*, 2005 WL 3157562, at *1 (W.D. Okla. Nov. 23, 2005) (unpublished) (citing *Excell, Inc. v. Sterling Boiler & Mech., Inc.,* 106 F.3d 318, 320 (10th Cir. 1997)).  However, the Tenth Circuit has observed that, where the applicable state and federal law are the same,  the district court need not expressly decide the question.  *See Excell,* 106 F.3d at 320.

In this case, the Court need not expressly decide whether state or federal common law governs because Pennsylvania applies federal common law to determine the scope and enforceability of a forum selection clause.  *See, e.g., O'Hara v. First Liberty Ins.* Corp., 984 A.2d 938, 941 (Pa. Super. Ct. 2009) (citing *Carnival Cruise Lines v. Shute,* 499 U.S. 585, 589 (1991)); *Patriot,* 915 A.2d at 651(citing *Carnival Cruise Lines,* 499 U.S. 585 and *M/S Bremen v. Zapata*

*Offshore Co.*, 407 U.S. 1, 10 (1972), *overruled on other grounds, Lauro Lines v. Chesser*, 490 U.S. 495 (1989)).

Under federal common law, mandatory forum selection clauses are *prima facie* valid and enforceable. *Carnival Cruise Lines*, 499 U.S. at 589; *M.S. Bremen,* 407 U.S. at 10; *Riley,* 969 F.2d at 957.  Apparently recognizing this rule,  Blackwell initially argues that the subject clause cannot be interpreted as mandatory, but constitutes a permissive forum selection clause which does not preclude maintenance of the lawsuit in this forum.

"The difference between a mandatory and permissive forum selection clause is that '[m]andatory forum selection clauses contain clear language showing that jurisdiction is appropriate only in the designated forum.'" *American Soda, LLP v. U.S. Filter Wastewater Group, Inc.*, 428 F.3d 921, 926 (10th Cir. 2005) (quoting *Excell,* 106 F.3d at 321).  "'In contrast, permissive forum selection clauses authorize jurisdiction in a designated forum, but do not prohibit litigation elsewhere.'" *Id.* at 927.

Blackwell argues the clause in this case is permissive because the Agreement provides that, if a dispute arises and no resolution is reached by discussion between the parties, the dispute "*may* be resolved by arbitration or by suit in court." Agreement at ¶ 23(c) (emphasis added).  Relying on the use of the word "may," Blackwell argues that the Tenth Circuit's decision in *K-V Scientific* compels a conclusion that the forum selection language is permissive.  The Court disagrees. Blackwell is correct that the Tenth Circuit held the forum selection clause at issue in *K-V Scientific* was permissive.  However, it did so because the clause referred only to jurisdiction and did not designate a specific forum for litigation.  *K-V Scientific*, 314 F.3d at 500.  Contractual language designating jurisdiction or choice of law typically does not create a mandatory forum selection

7

clause *unless* the contract also identifies a specific forum  in which litigation must be pursued or in which jurisdiction is exclusive.  *Id.; see also King v. PA Consulting Group, Inc.*, 78 F. App'x 645, 647 (10th Cir. 2003) (unpublished).  Additionally, contractual language providing that litigation "*may be maintained*" in an identified forum does not amount to a mandatory forum selection clause. *SBKC Service Corp.,* 105 F.3d at 580.

In contrast, "when the parties designate a particular county or tribunal, and the designation is accompanied by mandatory or obligatory language, a forum selection clause will be enforced as mandatory."  *American Soda,* 428 F.3d at 927.  Thus, reference to a specific forum, coupled with words such as "shall" or "must" creates a mandatory forum selection clause. *Id.; Milk 'N' More, Inc. v. Beavert,* 963 F.2d 1342, 1346 (10th Cir. 1992).

In this case, the forum selection language is contained in the paragraph providing the procedure for dispute resolution, which provides that the procedure applies to "*[a]ny dispute...arising out of or related to* this Agreement."  Subcontract ¶ 23 (emphasis added).  A dispute over the amount allegedly due and owing under a contract  arises from or is related to that contract because, at a minimum, "the origin of the dispute has some 'logical or causal connection' to the agreement." *John Wyeth,* 119 F. 3d at 1074.  Accordingly, the Court concludes that the clause unambiguously applies to any dispute regarding the work to be performed by Blackwell pursuant to the Agreement.   The Agreement further provides that, where litigation results from a dispute regarding the work to be performed under the Agreement, "suit *must* be instituted in, and the parties consent to the jurisdiction of, the Court of Common Pleas of Montgomery County, Pennsylvania." Agreement at ¶ 23(c) (emphasis added).

Because the Agreement provides that, if litigation results, it "must" be filed in a specific forum, it creates an unambiguous mandatory forum selection clause.  To avoid mandatory application of the clause, Blackwell bears the burden of demonstrating that its enforcement would be unreasonable or unjust, that the "clause is invalid for such reasons as fraud or overreaching," that its enforcement is contrary to the public policy of the chosen forum state, or that "trial in the contractual forum would be so gravely difficult and inconvenient that he will for all practical purposes be deprived of his day in court."  *M/S Bremen*, 407 U.S. at 15, 18.

Blackwell does not argue that the clause was induced by fraud or that it violates public policy.  Instead, it argues the clause should not be enforced because: 1) Henkels waived its right to challenge venue when it removed the action to this Court; 2) the forum selection clause is inapplicable because Blackwell was not aware of it when it executed the Agreement; 3) the Agreement containing the forum selection clause does not govern this action because it was replaced by an oral agreement, and Blackwell's claims are based only on the oral agreement; 4) Henkels waived its right to enforce the clause by failing to follow its procedures; and 5) even if the clause is valid, its enforcement in this case would be unconscionable or absurd.  The Court considers each of Blackwell's arguments below.

1.  Whether Henkels waived its right to seek enforcement of the clause:

Blackwell first argues that Henkels has waived its right to rely on the forum selection clause because it voluntarily removed the case to this Court and did not seek dismissal while the case was pending in state court.   Under federal law, however, Henkels's actions do not constitute a waiver.

After a case has been properly removed, "the case will proceed as if it originally had been brought in the federal court.  Thus, it has been settled by numerous cases that the removed case will

be governed by the Federal Rules of Civil Procedure and all other provisions of federal law related to procedural matters." *Wallace v. Microsoft Corp.*, 596 F.3d 703, 706 (10th Cir. 2010).  A motion seeking enforcement of a forum selection clause is typically analyzed under the Federal Rules of Civil Procedure as a Rule 12(b)(3) motion to dismiss for improper venue.  *See, e.g., K & V Scientific,* 314 F.3d at 497.  The Federal Rules of Civil Procedure govern procedural matters in a removed case in the same manner as if the case had originally been filed in federal court.  *Id.* Accordingly, Henkels did not waive its right to raise the venue issue by first removing the case prior to asserting its Rule 12(b)(3) motion.

2.  Whether the clause is unenforceable because Blackwell failed to review it before executing the Agreement:

Blackwell next contends the forum selection clause should not be enforced because its president did not have time to review it prior to executing the Agreement.   It argues that the clause was not discussed in oral negotiations resulting in the written Agreement, and the Agreement was "hurriedly" signed and returned to Henkels.    Response at p. 1.

Blackwell's argument does not impact the enforceability of the Agreement and the forum selection clause, as  "failure to read a contract does not excuse a party from being bound by its terms."  *De Lage Landen Financial Services, Inc. v. Rasa Floors, Inc.*, 792 F. Supp. 2d 812, 827 (E.D. Pa. 2011).  Failure to read a contract is "neither a defense nor an excuse and will not provide grounds for avoiding the contract or any provision therein."  *Patriot*, 915 A.2d at 651 (citing *Pennsylvania Manufacturers' Ass'n Insurance Co. v. Aetna Casualty & Surety Insurance Co.*, 233 A.2d 548 (1967)).  More specifically, a forum selection clause cannot be avoided based on an averment that the defendant had not read the choice-of-forum language.  *Bancorp Group, Inc. v. Pirgos, Inc.,* 744 A.2d 791, 794 (Pa. Super. 2000).

Accordingly, Blackwell cannot overcome the enforceability of the forum selection clause by claiming that it failed to read the provision prior to executing the Agreement.

3.  Whether the Agreement is unenforceable because it was replaced by a subsequent oral contract:

Blackwell next argues that, even if  the forum selection clause is otherwise enforceable, it does not apply in this case because the written Agreement was replaced by an oral contract that did not contain a forum selection agreement.  According to Blackwell,  its claim for damages based on services rendered relies only on the oral contract.

Blackwell's argument is based on the fact that, after executing the Agreement, the area in which the pipeline was to be constructed was adversely impacted by two hurricanes.  As a result, the work to be performed was delayed by reasons beyond the parties' control.  Because the original completion deadlines set out in the Agreement at paragraph 2 could not be met,  the parties orally agreed to extend those deadlines.   Blackwell contends that the oral modification adjusting the performance deadlines created a new contract and rendered all other terms of the Agreement, including the forum selection clause, inapplicable.

As Henkels points out, the Agreement contains an express provision that it "cannot be changed, modified, or otherwise varied except by written agreement signed by both parties hereto." Agreement at ¶ 34.   Henkels does not dispute that, because of the unavoidable delays in the performance deadlines caused by the hurricanes, the parties modified the completion deadlines set out in paragraph 2 of the Agreement, and their agreement to do so was not reduced to writing.   It contends, however, that the extension of the performance deadlines did not eliminate the other terms and provisions of the Agreement because the parties never agreed to modify or terminate those terms and provisions.

Whether an enforceable oral contract existed and replaced a prior written agreement presents a question of state law.  According to Pennsylvania law, a contract other than one for the sale of goods may be modified orally under certain circumstances, even when the written contract requires only written modifications.  *Somerset Community Hosp. v. Allan B. Mitchell & Assocs., Inc.*, 685 A.2d 141, 146 (Pa. Super. Ct. 1996).  "An agreement that prohibits non-written modifications may be modified by subsequent oral agreement if the parties' conduct clearly shows the intent to waive the requirement that the amendments be made in writing... An oral contract modifying a prior written contract, however, must be proved by clear, precise and convincing evidence."  *Id.*

However, the oral modification of specific terms of a written contract does not eliminate the remaining otherwise enforceable provisions of the written agreement.  "[O]ral modifications of a contract required by the statute of frauds to be in writing which relate to the manner of performance do not change the character of the written agreement and are enforceable." *Hostetter v. Hoover*, 547 A.2d 1247, 1250 (Pa. Super. Ct. 1988).  Applying that rule, *Hostetter* held that  "a modification as to the time of settlement for a contract for the sale of real estate does not result in a new and substituted agreement and does not reduce the written contract to one in parol."  *Id.*  "'The rule is ... that if a mere alteration of some term of performance is made for the convenience of the parties, the character of the agreement as a writing is not altered.'" *Hostetter*, 547 A. 2d at 1250 (quoting *Novice v. Alter*, 139 A. 590 (Pa. 1927)).

In this case, the parties orally agreed to modify the performance deadlines set out in the written Agreement, and there is no dispute that the modification was necessitated by the unexpected adverse weather conditions which delayed the work.   However, there is nothing in the record to

suggest that the parties replaced *all* provisions of the written Agreement by orally modifying specific terms regarding performance deadlines.

Blackwell fails to offer any argument suggesting that, by orally modifying the performance dates, the parties also intended to change the other provisions of the Agreement. In fact, the record indicates Blackwell regarded the Agreement as remaining in effect because its subsequent correspondence to Henkels concerning Blackwell's claims for payment specifically refers to portions of the Agreement. *See* October 1, 2012 letter from Blackwell to Henkels, Exhibit 2 to reply brief of Henkels. Blackwell's argument thus does not support a conclusion that the oral modification of the deadlines for performance replaced or altered the other provisions of the Agreement, including the forum selection clause.

4.  Whether the clause is unenforceable because Henkels did not follow the dispute resolution procedures:

Blackwell next argues the clause is unenforceable because Henkels did not comply with the deadline applicable to the dispute resolution procedures contained in that clause, and it contends that compliance constitutes a condition precedent to the application of the forum selection clause.

The Agreement provides that, when there is a dispute regarding its terms or provisions, the dispute "shall be reduced to writing and submitted to the President of each party." Agreement ¶ 23(a). According to the letter submitted as Exhibit C to Blackwell's response brief, its attorney submitted a written statement of dispute in an August 17, 2012 letter to Henkels, and Henkels acknowledges the receipt of this letter. The Agreement then provides that the parties' presidents or their representatives shall meet "within 30 days following receipt of the written dispute" and attempt to resolve the issues. *Id.* According to the affidavit of Blackwell's president, this meeting occurred on September 7, 2012, which was within the 30-day period required by the Agreement.

Affidavit of Robert Blackwell ("Blackwell affidavit"),  Exhibit A to brief in response to motion to dismiss.  Paragraph 23 of the Agreement provides that, within three days following the meeting, the presidents or their representatives "shall issue a written statement either resolving the dispute or stating that they cannot achieve a resolution by agreement."  Subcontract ¶ 23(a).  The Agreement then provides that, within 30 days after such written statement, Henkels must elect to either submit the dispute to arbitration or pursue litigation.  *Id.*

Blackwell contends that the 30-day deadline was triggered when it received a September 27, 2012 letter from Henkels.  Blackwell affidavit at ¶ 13.  Because Henkels admittedly did not pursue arbitration or litigation within that time period, Blackwell argues the remainder of Paragraph 23, including the forum selection clause, is inapplicable because Henkels's compliance with the 30-day deadline was a condition precedent to the other provisions, including the forum selection clause.

However, as Henkels points out, the text of the September 27, 2012 letter does not state that no resolution can be reached by the parties.  Instead, it conveys a settlement offer from  Henkels to Blackwell.  Letter, Exhibit B to Blackwell response.  Furthermore, Henkels notes that Blackwell responded to the September 27, 2012 letter in an October 1, 2012 letter in which he rejected Henkels's proposed offer, but did not make a counter offer.  Henkels contends that the October1 letter was the first communication that could be construed as a written statement that the dispute could not be resolved by the parties.  Accordingly, it argues that October 1, 2012 was the earliest date which could have triggered Henkels's 30-day election period to seek arbitration or litigation. Blackwell filed this lawsuit on October 19, 2012, prior to the expiration of 30 days from October 1. Even if the September 27, 2012 letter from Henkels to Blackwell triggered the 30-day deadline, this lawsuit was filed prior to 30 days from September 27.

14

Blackwell offers no legal authority to support its contention that Henkels's compliance with the 30-day deadline was a condition precedent to enforcement of the forum selection clause. In any event, Blackwell filed this lawsuit before the expiration of the 30-day time period. The Court finds Blackwell's contention in this regard unpersuasive and an insufficient basis on which to find the forum selection clause unenforceable.

5.  Whether enforcement of the clause would be unconscionable or result in an absurdity:

Blackwell next argues that enforcement of the forum selection clause in this case would be improper or unconscionable because it would effectively deprive Blackwell of a forum in which to pursue litigation regarding the Agreement. In support of its argument, Blackwell relies on *C&L Enterprises v. Citizen Band Potawatomi Indian Tribe of Oklahoma*, 532 U.S. 411 (2001).

Contrary to Blackwell's apparent contention, *C&L Enterprises* did not involve the interpretation or enforcement of a forum selection clause, nor was a forum selection clause at issue. Instead, the decision addressed the issue of tribal sovereign immunity to suit in any forum. The question was whether the Citizen Band tribe waived its tribal immunity to suit pursuant to the terms of a construction contract executed by the tribe and a  non-tribal entity. There was no forum selection at issue, as Citizen Band did not contest the propriety of the forum selected by C&L. Instead, the Citizen Band tribe argued "it has not expressly waived its sovereign immunity in *any* judicial forum." *Id.* at 421 (emphasis added).

In this case, unlike the tribe in *C&L Enterprises,* Henkels is not asserting that Blackwell cannot file suit against Henkels in any judicial forum or that Blackwell has no right to initiate a lawsuit to assert its rights under the Agreement.  Instead, Henkels seeks to enforce the clause that designates a specific forum for such litigation. Contrary to Blackwell's contention, enforcement of

the forum selection clause in this case would not be unconscionable or result in an "absurdity" by depriving Blackwell of the right to pursue litigation to assert its claims.

The Court concludes that Blackwell has presented no persuasive argument or authority that renders the mandatory forum selection clause unenforceable, and the clause must be enforced. Having so concluded, the Court must next determine the proper disposition of this case.

Where a forum selection clause renders the selected district court an improper forum, that court has discretion to transfer the action to the proper forum pursuant to 28 U. S. C. § 1404(a) or to dismiss the action without prejudice to its filing in the designated forum. *Pierce*, 137 F.3d at 1192. However, when the clause specifies venue in a county or a state court, transfer is not authorized because, "[a]lthough a federal court may transfer a case to another *federal* court under 28 U.S.C. § 1404(a), there is no parallel provision granting federal courts authority to transfer a case to *state* court." *Quarles v. United States,* 2006 WL 2645131 at *3 (N.D. Okla. Sept.12, 2006) (unpublished) (emphasis added). "Transfer is not available ... when a forum selection clause specifies a non-federal forum." *Mozingo v. Trend Personnel Services*, 2012 WL 6051529, at *4 n.2 (10th Cir. Dec. 6, 2012) (unpublished) (citing *Salovaara v. Jackson Nat'l Life Ins. Co.*, 246 F.3d 289, 297 (10th Cir. 2001)). Instead, the district court must dismiss the action without prejudice so that it may be filed in the designated forum. *Gross v. Silverberg*, 2010 WL 5147594, at *2 (D. Colo. Dec. 13, 2010) (unpublished) (citing *Quarles*, 2006 WL 2645131, at *3 and *Langley v. Prudential Mortgage Capital Co.*, 546 F.3d 365, 371 n.2 (6th Cir. 2008)).

The Agreement in this case expressly designates only the Court of Common Pleas of Montgomery County, Pennsylvania as the proper forum, and does not authorize any federal forum. Accordingly, transfer is not available. There is no contention that dismissal without prejudice would

adversely impact the statute of limitations governing the asserted claims, nor is there any other contention that dismissal without prejudice is not in the interests of justice.  Therefore, dismissal without prejudice is proper.

IV.  Conclusion:

      For the reasons set forth herein, the motion to dismiss [Doc. No. 4] is GRANTED.  This action is dismissed without prejudice to its refiling in the forum designated by the forum selection clause in the parties' Agreement.

      IT IS SO ORDERED this 16th day of July, 2013.

_____
TIMOTHY D. DEGIUSTI
UNITED STATES DISTRICT JUDGE